REVISED AUGUST 27, 2002

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-50759

_____

HOSPITALITY HOUSE, INC; STONEBRIDGE HEALTH CENTER, INC;
REGENCY VILLAGE CARE CENTER, LTD; MEDICAL HOSPITAL OF BUNA,
INC; RIDGECREST RETIREMENT CENTER, LTD; TEXAS ALLIANCE FOR
FAIR NURSING HOME REIMBURSEMENT

Plaintiffs - Appellees

v.

DON A GILBERT, Commissioner of the Texas Health and Human
Services Commission; ERIC M BOST, Commissioner of the Texas
Department of Human Services; DAVID HERNDON, Chairman of the
Board, Texas Department of Human Services; ELIZABETH SEALE,
Member of the Board of the Texas Department of Human
Services; JOHN A CUELLAR, Member of the Board of the Texas
Department of Human Services; TERRY DURKIN WILKINSON, Member
of the Board of the Texas Department of Human Services;
CAROLE WOODARD, Member of the Board of the Texas Department
of Human Services

Defendants - Appellants

_____

Appeal from the United States District Court
for the Western District of Texas
_____

July 16, 2002

Before KING, Chief Judge, and GARWOOD and HIGGINBOTHAM, Circuit
Judges.

KING, Chief Judge:

The Defendants-Appellants, officials of the Texas Health and

Human Services Commission and the Texas Department of Human

Services, appeal the district court's denial of their motion to dismiss in which they asserted Eleventh Amendment immunity from the district court's exercise of jurisdiction over an action brought by operators of nursing homes in Texas to enforce a settlement agreement. Because the district court does not have subject matter jurisdiction over the enforcement action, we do not reach the issue of Eleventh Amendment immunity. Instead, we vacate the district court's order denying the state health officials' motion to dismiss and remand this case to the district court with instructions to dismiss the nursing home operators' enforcement action against the state health officials for lack of subject matter jurisdiction.

## I. BACKGROUND

The Defendants-Appellants in this case are various officials of the Texas Health and Human Services Commission and the Texas Department of Human Services (collectively the "state health officials"). The Plaintiffs-Appellees are five businesses that operate nursing homes in Texas and one non-profit corporation that advocates adequate and fair Medicaid reimbursement rates for nursing homes in Texas (collectively the "nursing home operators"). The nursing home operators initiated the instant case on February 28, 2001, when they filed suit in the district court to enforce a settlement agreement (the "Agreement") that was negotiated pursuant to a prior lawsuit brought by the Texas Health Care Association ("THCA") against the state health

2

officials.[1]  Alleging that the state health officials had failed to comply with the Agreement, the nursing home operators sought declaratory and injunctive relief as intended beneficiaries of the Agreement (or as representatives of intended beneficiaries).

The Agreement arose from a lawsuit filed by the THCA in November 1996 to compel the state health officials to satisfy their obligations under the Boren Amendment, 42 U.S.C. § 1396a(a)(13)(A) (1994) (repealed 1997).[2]  The Boren Amendment required that the medical assistance plans submitted by states participating in the Medicaid program provide for reimbursement for "hospital services, nursing facility services, and services in an intermediate care facility for the mentally retarded" at rates "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." 42 U.S.C. § 1396a(a)(13)(A); see also Wilder v. Vir. Hosp. Ass'n, 496 U.S. 498, 524 (1990) (holding that "[t]he Boren Amendment to the [Medicaid] Act creates a right, enforceable in a private cause of action pursuant to § 1983, to have the State adopt rates that it finds are reasonable and adequate rates to meet the costs of an efficient and economical health care provider").[3]  After

---

[1]  The Texas Health Care Association is a private non-profit organization whose members own nursing home facilities in Texas.

[2]  Congress repealed the Boren Amendment in August 1997. See Balanced Budget Act of 1997, Pub. L. No. 105-33, § 4711(a), 111 Stat. 251, 507-08 (1997).

[3]  Congress replaced the Boren Amendment's "reasonable and adequate rate" requirement with the requirement that states

3

negotiations, the THCA and the state health officials entered into the Agreement on January 27, 1997.

Under the Agreement, the state health officials were obligated, inter alia, (1) to adopt specified reimbursement rates for 1997, (2) "to evaluate the overall adequacy of [reimbursement] rates and . . . the methodology [for rate determination]" with the goal of "achiev[ing] a rate that is reasonable and adequate to meet the costs that efficiently and economically operated providers must incur in order to provide care and services in conformity with applicable State and Federal laws, regulations and quality and safety standards," (3) to negotiate in good faith with the nursing home operators in an attempt to reach agreements on various issues related to Medicaid reimbursement rates, and (4) to submit recommended changes in the reimbursement procedure to the state legislature. In exchange, the THCA agreed "not to bring a Boren Amendment challenge to the 1997 rates adopted pursuant to this agreement," with the caveat that "[t]his covenant not to sue shall not preclude THCA from bringing any subsequent action to enforce the terms and covenants of this agreement." The Agreement further provided that the parties would move for dismissal of the case without prejudice

---

participating in the Medicaid Program "provide . . . for a public process for determination of rates of payment . . . for hospital services, nursing facility services, and services of intermediate care facilities for the mentally retarded." Balanced Budget Act of 1997, Pub. L. No. 105-33, § 4711(a), 111 Stat. 251, 507 (1997) (codified at 42 U.S.C. § 1396a(a)(13)(A) (Supp. III 1997)).

"within three working days" after the Board of the Texas Department of Human Services adopted the 1997 rates specified in the Agreement.

Pursuant to the Agreement, the THCA and the state health officials filed an agreed motion to dismiss the case without prejudice on January 30, 1997.  In this motion, the parties incorporated by reference the Agreement, which was attached as an exhibit.  The district court granted the motion to dismiss, entering the following order:

> Before the Court is the parties' Agreed Motion to Dismiss.  Following consideration, the Court finds the Motion should be granted.
> IT IS THEREFORE ORDERED that Civil Action No. A-96-CA-744-SS be and said action is hereby DISMISSED WITHOUT PREJUDICE.

Approximately four years after the district court dismissed the THCA's case against the state health officials, the nursing home operators filed the instant suit to enforce the Agreement in the same district court.  The state health officials filed a motion to dismiss on the ground that they were entitled to Eleventh Amendment immunity.  On July 13, 2001, the district court denied the state health officials' motion to dismiss, concluding that the court had "jurisdiction to construe and declare the terms of the settlement agreement . . . that was incorporated into its [dismissal] order" and that the state health officials were not entitled to Eleventh Amendment

5

immunity.[4]  In this interlocutory appeal of the denial of their motion to dismiss, the state health officials contend that the district court not only erred in rejecting their assertion of Eleventh Amendment immunity from the exercise of that court's jurisdiction, but also erred in making the preliminary determination that the district court had subject matter jurisdiction (in the form of ancillary jurisdiction) to enforce the Agreement.

## II. Appellate Jurisdiction and Standard of Review

This court has jurisdiction to address on interlocutory appeal both the state health officials' claim that they are entitled to Eleventh Amendment immunity and their claim that the district court lacks subject matter jurisdiction over the nursing home operators' enforcement action.  Under the collateral order doctrine, appellate courts have jurisdiction to review on interlocutory appeal a district court's denial of a motion to dismiss based on a state's assertion of Eleventh Amendment immunity.  Reickenbacker v. Foster, 274 F.3d 974, 976 (5th Cir. 2001).  We review such denials de novo.  Id.  Further, where, as

---

[4]  The state health officials argued that the Eleventh Amendment barred the district court from exercising jurisdiction over the nursing home operators' suit because the repeal of the Boren Amendment meant that enforcement of the Agreement would no longer remedy violations of federal law.  In rejecting this assertion of Eleventh Amendment immunity, the district court reasoned that "the subject matter of the settlement agreement, i.e., Medicaid reimbursement rates, is merely coincidental to the fact that plaintiffs are seeking to enforce a prior settlement agreement between parties before this Court."

in the instant case, we have interlocutory appellate jurisdiction to review a district court's denial of Eleventh Amendment immunity, we may first determine whether there is federal subject matter jurisdiction over the underlying case.  See Timpanogos Tribe v. Conway, 286 F.3d 1195, 1201 (10th Cir. 2002) ("[B]ecause we have appellate jurisdiction over the interlocutory appeal of defendants' assertion of Eleventh Amendment immunity, we also have appellate jurisdiction to determine whether the district court had subject matter jurisdiction over the Tribe's underlying claim against defendants in the first instance."); cf. Texas v. Real Parties in Interest, 259 F.3d 387, 391 (5th Cir. 2001) (noting that "[w]ith appellate jurisdiction [over the state's interlocutory appeal of the denial of Eleventh Amendment immunity] established," it was proper "to address the primary jurisdictional inquiry in this appeal: whether the district court erred by exercising removal jurisdiction over this state court action under the All Writs Act").[5]

The nursing home operators contend that this court should decline to address the state health officials' claim that the district court is without subject matter jurisdiction because the officials failed to raise this issue in the district court. Initially, we note that "parties cannot waive a want of subject

---

[5]  Generally, appellate courts do not have jurisdiction to review on interlocutory appeal a district court's denial of a motion to dismiss based on lack of subject matter jurisdiction. See Catlin v. United States, 324 U.S. 229, 236 (1945).

7

matter jurisdiction." Ziegler v. Champion Mortgage Co., 913 F.2d 228, 229 (5th Cir. 1990). Furthermore, as the Supreme Court has stated: "On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (internal quotations and citation omitted); see also Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."). Accordingly, it is appropriate for this court to determine whether there is federal jurisdiction over the nursing home operators' enforcement action before considering whether the Eleventh Amendment bars the exercise of federal jurisdiction.

### III. SUBJECT MATTER JURISDICTION: A DISTRICT COURT'S ANCILLARY JURISDICTION TO ENFORCE A SETTLEMENT AGREEMENT

In Kokkonen v. Guardian Life Insurance Co., 511 U.S. 375 (1994), the Supreme Court explained that "[e]nforcement of [a] settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." Id. at 378. The Court held that a court's "ancillary jurisdiction" "to manage its proceedings, vindicate its authority, and effectuate its decrees" provides such an independent jurisdictional basis to enforce a settlement agreement only if "the parties' obligation to comply with the

8

terms of the settlement agreement ha[s] been made part of the order of dismissal." Id. at 380-81. The Court specified two ways in which a court may make a settlement agreement part of its dismissal order: "either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." Id.[6]

In the instant case, there is no question that the district court did not make the Agreement part of its dismissal order by including a separate provision retaining jurisdiction to enforce the Agreement. Rather, the district court concluded that it had ancillary jurisdiction because it incorporated the Agreement's terms into its dismissal order. Specifically, the district court stated:

> On January 27, 1997, the parties signed a settlement agreement and submitted it as an attachment to an agreed motion to dismiss. On January 31, 1997, this Court granted the agreed motion to dismiss, and incorporated the settlement agreement into its Order by attaching it as an exhibit as requested by the parties.

---

[6] The Kokkonen Court made clear that a district court may have ancillary jurisdiction to enforce a settlement agreement even where, as in the instant case, the previous dismissal was not effected by court order, but rather by the filing of "a stipulation of dismissal signed by all parties" pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii). FED. R. CIV. P. 41(a)(1)(ii). The Court noted that even though Rule 41(a)(1)(ii) "does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal," the district court has the authority to make a settlement agreement part of its dismissal order "if the parties agree." 511 U.S. at 381-82.

It is not entirely clear whether the district court meant that the Agreement had been attached to the dismissal order or to the motion to dismiss.[7]  In any event, the parties agree that the Agreement was not attached to the district court's dismissal order.[8]  Moreover, even assuming that the Agreement were attached to the order, this fact alone would not be sufficient to incorporate the Agreement into the order under Kokkonen.  At most, physical attachment of a settlement agreement to a dismissal order evinces the district judge's "awareness and approval of the terms of the settlement agreement," which "do not suffice to make them part of his order."  Kokkonen, 511 U.S. at 381.[9]

---

[7]  Notably, while the parties did state in their agreed motion to dismiss that the Agreement "is attached hereto as Exhibit 1 and incorporated herein as if fully set forth," neither in the motion to dismiss nor in the Agreement did the parties request that the Agreement be attached to the district court's dismissal order "as an exhibit."  Thus, the district court's statement that the Agreement had been attached "as an exhibit" may indicate that the district court was referring to the fact that the Agreement was attached to the agreed motion to dismiss.

[8]  Although the nursing home operators argue in their brief that their agreed motion to dismiss (with the Agreement attached thereto as an exhibit) was attached to the dismissal order, their counsel clarified at oral argument that the Agreement was attached only to the agreed motion to dismiss, not to the dismissal order.

[9]  In a pre-Kokkonen decision, this court held that "once a court dismisses an action with prejudice because of a settlement agreement, and the agreement is neither approved of nor incorporated by the court in its decree or order and the court does not indicate any intention to retain jurisdiction, an action to enforce the settlement agreement requires federal jurisdiction independent of the action that was settled."  Langley v. Jackson State Univ., 14 F.3d 1070, 1074 (5th Cir. 1994) (emphasis added).

10

The Kokkonen Court's determination that a district court has ancillary jurisdiction to enforce a settlement agreement only if the court makes the agreement part of its dismissal order is based on the principle that "[f]ederal courts are courts of limited jurisdiction." Id. at 377. The Court pointed out that "[n]o federal statute" gives federal courts jurisdiction to hear a claim for breach of an agreement merely by virtue of the fact that "part of the consideration for [the agreement] was dismissal of an earlier federal suit." Id. at 381. However, the Court reasoned, where a district court makes the agreement part of its dismissal order, "a breach of the agreement would be a violation of the order," and, thus, enforcement of the agreement would amount to enforcement of the order, an action that the court may take pursuant to its ancillary jurisdiction "to manage its proceedings, vindicate its authority, and effectuate its decrees." Id. at 380-81. Correspondingly, the Court explained that where the district court does not make a settlement agreement part of its dismissal order, "jurisdiction over [the agreement] is in no way essential to the conduct of federal-court business," and, thus, absent some independent basis for federal jurisdiction, "enforcement of the settlement agreement is for state courts." Id. at 381-82. Accordingly, Kokkonen makes clear

_____

We take this opportunity to clarify that, to the extent that Langley is inconsistent with Kokkonen's explicit statement that a district court's "mere awareness and approval" of a settlement agreement is insufficient to provide a basis for ancillary jurisdiction, Langley is necessarily overruled by Kokkonen.

11

that in the context of ancillary jurisdiction to enforce settlement agreements, the principle that federal courts are courts of limited jurisdiction requires distinguishing a district court's intention to make the terms of a settlement agreement part of its dismissal order from the court's mere recognition or approval of the settlement agreement. See id. at 381. We thus conclude that to make a settlement agreement part of a dismissal order by incorporation, Kokkonen requires a district court to clearly indicate its intention within the dismissal order itself by expressly incorporating the agreement's terms.

Admittedly, the Kokkonen Court did not explicitly hold that a district court's order of dismissal must contain an express statement incorporating a settlement agreement in order to vest the court with ancillary jurisdiction to enforce the agreement. However, the Court did suggest such a requirement by noting that the dismissal order at issue in that case not only "did not reserve jurisdiction in the District Court to enforce the settlement agreement[, but also] did not so much as refer to the settlement agreement." 511 U.S. at 377. Furthermore, a number of our sister circuits have similarly interpreted Kokkonen to require that a dismissal order expressly indicate the district court's intention to make the terms of a settlement agreement part of its dismissal order.

For example, in Miener v. Missouri Department of Mental Health, 62 F.3d 1126 (8th Cir. 1995), the Eighth Circuit noted

12

that "although Kokkonen does not state how a district court may incorporate a settlement agreement in a dismissal order, the case does suggest the agreement must be 'embod[ied]' in the dismissal order." Id. at 1128 (quoting Kokkonen, 511 U.S. at 381) (alteration in original). The Miener court thus concluded that a "mere reference" in the dismissal order at issue "to the fact of settlement does not incorporate the settlement agreement in the dismissal order." Id. (citing Hagestad v. Tragesser, 49 F.3d 1430, 1433 (9th Cir. 1995)). Similarly, in In re Phar-Mor, Inc. Securities Litigation, 172 F.3d 270 (3d Cir. 1999), the Third Circuit held that the district court's inclusion of the phrase "pursuant to the terms of the Settlement" in its dismissal order did not make the settlement agreement part of the order as contemplated by the Court in Kokkonen. Id. at 274-75. Rejecting the argument that this phrase was ambiguous and that the court of appeals should thus defer to the district court's determination that the agreement was incorporated into the order, the Third Circuit reasoned that "under Kokkonen, unexpressed intent is insufficient to confer subject matter jurisdiction." Id. at 275.

Likewise, in Smyth v. Rivero, 282 F.3d 268 (4th Cir. 2002), the Fourth Circuit held that under Kokkonen, "[t]he obligation to comply with a settlement's terms must be expressly made part of a court's order for jurisdiction to enforce the settlement after dismissal of the action to exist." Id. at 283 (citing Kokkonen, 511 U.S. at 381). The Smyth court thus found that the dismissal

13

order at issue did not provide the district court with ancillary jurisdiction to enforce the settlement agreement because "the court's findings [in its dismissal order] are most properly read as noting and reciting the agreement . . . as a component of its analysis of the mootness of the case." Id. at 284. According to the Smyth court, "[n]othing in th[e dismissal] order suggests that the terms of the parties' agreement are 'incorporated' into the order by a clear indication that they must be complied with pursuant to the order itself, as opposed to the principles of contractual obligation." Id. Thus, the courts of appeals in Miener, In re Phar-Mor, and Smyth all concluded that under Kokkonen, a dismissal order's mere reference to a settlement agreement is not sufficient to vest a district court with ancillary jurisdiction to enforce that agreement.

In the instant case, the district court's dismissal order does not even contain a reference to the Agreement. The district court's dismissal order, in its entirety, states only the following:

> Before the Court is the parties' Agreed Motion to Dismiss. Following consideration, the Court finds the Motion should be granted.
> IT IS THEREFORE ORDERED that Civil Action No. A-96-CA-744-SS be and said action is hereby DISMISSED WITHOUT PREJUDICE.

The nursing home operators contend that the dismissal order's reference to the agreed motion to dismiss achieves incorporation of the Agreement under Kokkonen, reasoning that the dismissal order refers to the agreed motion to dismiss, which, in turn,

14

expressly incorporates the Agreement.[10]  Accordingly, the nursing home operators contend, the district court in effect expressly incorporated the Agreement into the dismissal order by referencing a document (the parties' agreed motion to dismiss) that expressly incorporated the Agreement.

In light of Kokkonen and its progeny, we conclude that a district court's reference in its dismissal order to an agreed motion to dismiss does not indicate an intention to make a settlement agreement attached to that motion to dismiss part of the order.  That the parties' motion to dismiss expressly incorporated the Agreement does not affect this conclusion.  Kokkonnen requires that the dismissal order contain a provision incorporating the Agreement.  While the Kokkonen Court did consider the content of the parties' stipulation of dismissal as well as the dismissal order, unlike the instant case, the parties in Kokkonen drafted the stipulation and order as one document and submitted it to the court for its signature.  See 511 U.S. at 376-77.  Where, as here, the district court drafts and signs its own dismissal order granting an agreed motion to dismiss (rather than signing a "stipulation and order of dismissal" submitted by the parties), Kokkonen requires a provision within that order

---

[10]   See supra, note 7.

15

expressly incorporating the agreement's terms as the order's terms.[11]

Further, even assuming a district court could effect incorporation of a settlement agreement by incorporating a motion to dismiss that in turn incorporates the agreement, that is not what the district court did in this case. Rather, the district court stated only that "[b]efore the Court is the parties' Agreed Motion to Dismiss." This statement merely recognizes that the dismissal is based on the motion and, at most, recognizes the fact of the Agreement attached thereto — not any intention on the part of the district court to incorporate the Agreement into

---

[11]  For the same reason, the nursing home operators' incorporation argument based on a provision contained in the Agreement — specifically, that the "THCA is not preclude[d] . . . from bringing any subsequent action to enforce the terms and covenants of this agreement" — is unpersuasive.

The THCA and a similar organization, as amici for the nursing home operators, likewise make an argument based on the possibility of future litigation relating to the dismissed suit. In particular, the amici contend that the district court's dismissal of the case without prejudice indicates its intent to retain jurisdiction to enforce the Agreement. The amici reason that, unlike a dismissal with prejudice, "[a] dismissal without prejudice allows parties to bring subsequent actions concerning the case." They further maintain that the district court's dismissal without prejudice distinguishes the instant case from Kokkonen, which involved a dismissal with prejudice. That distinction has no relevance, however. Even where a dismissal was without prejudice, a district court still must have an independent basis of jurisdiction to hear any future actions relating to the dismissed case. Furthermore, we note that the fact that the dismissal at issue in Kokkonen was with prejudice was irrelevant to the Court's determination that the district court was without jurisdiction to enforce the settlement agreement. Indeed, the Court proceeded on the assumption that the district court would have had jurisdiction to enforce the settlement agreement if that court had made the agreement part of its order.

its order or to retain jurisdiction to enforce the Agreement. Under Kokkonen, such a statement is insufficient to make enforcement of the Agreement equivalent to enforcement of the district court's order, and thus cannot confer ancillary jurisdiction. See 511 U.S. at 381 ("The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order."); cf. id. at 376 (holding that the district court was without jurisdiction to enforce a settlement agreement even though the substance of the agreement was read into the record).

Thus, the district court does not have subject matter jurisdiction to enforce the Agreement based on that court's order dismissing the prior suit that gave rise to the Agreement. Given that the nursing home operators have not asserted another independent basis of federal jurisdiction, any action to enforce the Agreement is "for state courts." Kokkonen, 511 U.S. at 382.[12]

_____

[12] In their complaint initiating the instant case, in addition to seeking enforcement of the Agreement, the nursing home operators invoked 42 U.S.C. § 1983, asserting that the state health officials violated the nursing home operators' "constitutional and statutory rights . . . by reason of [the state health officials'] arbitrary and capricious failure to comply with the terms of the [Agreement]." However, in response to the state health officials' motion to dismiss the § 1983 claim on the ground that the nursing home operators had failed to allege the violation of a federal right, the nursing home operators insisted that "this is not a lawsuit wherein any of the plaintiffs are asserting violations of federal 'rights' with regard to the administration of the State's Medicaid program." Rather, the nursing home operators maintained, "[t]his is, primarily, a contract case." They reasserted this

17

## IV. CONCLUSION

For the foregoing reasons, we VACATE the district court's order denying the state health officials' motion to dismiss and REMAND this case to the district court with instructions to dismiss the nursing home operators' enforcement action against the state health officials for lack of subject matter jurisdiction.  Costs shall be borne by the Plaintiffs-Appellees.

---

characterization of their suit during oral argument before the district court on the state health officials' motion to dismiss, stating that "this is not a [§] 1983 case."  Accordingly, in its order denying the state health officials' motion to dismiss, the district court found that "the issue [in the case] is simply holding the defendants to the settlement agreement that resulted from the 1996 litigation."  Thus, by their clear representations to the district court that they were not alleging any violations of federal rights, the nursing home operators abandoned any § 1983 claim that they may have attempted to assert in their initial complaint.