# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 5, 2013

Lyle W. Cayce
Clerk

No. 12-10760

ADAM TECHNOLOGIES INTERNATIONAL S.A. DE C.V.,

Plaintiff-Appellant

v.

SUTHERLAND GLOBAL SERVICES, INCORPORATED,

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before GARZA, SOUTHWICK, and HAYNES, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Adam Technologies International S.A. de C.V. appeals the district court's denial of its motion to appoint an arbitrator under the Federal Arbitration Act. The district court denied the motion after determining the challenges to the appointment presented procedural questions to be decided by the International Centre for Dispute Resolution.  We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2010, Sutherland Global Services, Inc., filed a demand for arbitration with the American Arbitration Association, alleging Adam owed Sutherland $618,626.08 for unpaid services.  Sutherland referenced the parties' Master Services Agreement, which provided that the parties agreed to resolve

No. 12-10760

such dispute by arbitration in Rochester, New York, in accordance with the rules of the American Arbitration Association.

In May 2010, in a state court in Dallas, Texas, Adam filed an application to stay the arbitration and referenced the parties' antecedent Letter of Intent, which provided a different forum-selection and choice-of-law clause for disputes regarding the interpretation and enforcement of the Letter of Intent. Adam contended that Sutherland performed the work under the Letter of Intent, while Sutherland argued that the subsequent Master Services Agreement controlled.

Sutherland removed the civil action to the United States District Court for the Northern District of Texas, invoking the court's original diversity jurisdiction. 28 U.S.C. § 1332. Sutherland then filed a motion to stay the proceeding in favor of arbitration or in the alternative to dismiss.

On October 18, 2010, the district court entered a final judgment and dismissed Adam's claims for resolution by arbitration. In its original order, the district court determined the Master Services Agreement superseded the expired Letter of Intent. Accordingly, by basing its claims on an expired agreement, Adam had failed to state a claim upon which relief could be granted. Fed. R. Civ. P. 12(b)(6). Although not expressly using the word "compel" in its final judgment, the district court stated: "Plaintiff's claims are dismissed for resolution by arbitration." Thus, the clear import of the judgment was that if Adam wished to proceed with its claims, it must do so in arbitration. On November 4, 2010, Adam filed a motion to alter or amend the judgment. As we will discuss, the district court ruled on the motion in May 2011.

In February 2011, the parties attempted to resolve their dispute through mediation. They selected attorney Phillip Spellane, who previously represented

No. 12-10760

Sutherland in a labor dispute, as the mediator. By April, the parties were unable to reach an agreement through mediation and utilized the arbitration procedure provided in their Master Services Agreement. This agreement required the dispute to be brought to a sole arbitrator if the parties mutually agreed to one within a reasonable period. If not, the parties were required to refer the dispute to three arbitrators. Both Adam and Sutherland were required to appoint one arbitrator each, and those two appointed arbitrators were required to appoint a third, presiding arbitrator.

After not agreeing to a sole arbitrator, Sutherland appointed its arbitrator, and Adam appointed former mediator Spellane as its arbitrator. On May 13, 2011, the International Centre for Dispute Resolution ("ICDR"), which is the arm of the American Arbitration Association that administers arbitration between internationally diverse parties, informed Sutherland that both arbitrators had agreed to serve. On May 16, Sutherland challenged Spellane's appointment under Articles 7 and 8 of the ICDR International Arbitration Rules because of Spellane's former involvement in the controversy and his *ex parte* communications with the parties.

Adam contended that Sutherland's challenge was untimely, but the ICDR sustained the objection on June 6, and required Adam to appoint a new arbitrator by June 21. Adam then filed a notice to arbitrate Spellane's removal, which the ICDR denied on the basis that his removal "was decided and confirmed by the ICDR in its sole discretion as [an] administrative decision." Adam received two extensions of the deadline to appoint an arbitrator and ultimately failed to appoint anyone by the ICDR's subsequent deadline of July 12. On July 29, the ICDR appointed the second arbitrator, who worked with

3

No. 12-10760

Sutherland's appointed arbitrator to select the third, presiding arbitrator. The panel initially set a final-hearing date for the arbitration in April 2012.

Meanwhile, on May 26, 2011, the district court vacated its October 18, 2010 order:

> After careful consideration, the Court finds that it was unnecessary to determine that the [Letter of Intent] LOI was superseded by the [Master Services Agreement] MSA. Courts are required to resolve doubt over the coverage of an arbitration agreement in favor of arbitration. *Southland Corp. v Keating,* 465 U.S. 1, 10 (1984). Adam Technologies does not dispute the Court's finding that this case belongs in arbitration. However, in determining whether the arbitration agreement controlled in this case, it was unnecessary for the Court to determine whether the MSA or the LOI controlled the dispute between the parties. Sutherland maintains its claims are brought pursuant to the MSA. Adam Technologies argued that the claims appeared to be brought pursuant to the LOI. Because there was a dispute as to whether the MSA, and thus, the arbitration agreement, controlled, and whether the LOI was superseded by the MSA, the Court was required to resolve doubt in favor of arbitration. *Id.* The determination as to which contract controls the dispute between the parties is for the arbitrator. Because the Court finds that its determination that the LOI was superseded by the MSA was unnecessary to its judgment, the Order of October 18, 2010 is vacated.

The court held it was not necessary to determine whether Adam had brought suit under an expired agreement, which was the conclusion in the vacated order. Instead, because any doubts over the coverage of an arbitration agreement are to be resolved in favor of arbitration, the court held that it was for an arbitrator to determine which of the parties' agreements controlled. This left undecided whether the Master Services Agreement superseded the Letter of Intent. Because only the Master Services Agreement provided for arbitration,

No. 12-10760

this amended ruling left for the arbitrator the decision of whether arbitration was required. The amended order did not address what was to occur if the arbitration determined, which it did not, that the Letter of Intent controlled and that arbitration was not the procedure to be followed to resolve the dispute.

If the district court was still dismissing the suit, nothing in the order explicitly stated that. The most definitive statement as to the result of the amended order was that the "Court grants in part and denies in part" the motion to amend. The earlier decision to dismiss based on Rule 12(b)(6) no longer had its legal underpinning, namely, that the complaint was based on an expired agreement on which no relief could be based. As the court initially held:

> The Court finds that the LOI does not apply to the parties['] dispute, but instead the MSA is the governing contract. Adam's entire original petition is based on the application of the LOI and therefore Adam has failed to state a claim for which relief can be granted. For the forgoing reasons the Court GRANTS Sutherland's Motion to Dismiss.

No new judgment was entered. We will discuss below whether we interpret the revised order as still dismissing the suit.

On November 18, 2011, Adam filed a motion under different subparts of Rule 60(b) to vacate the final judgment on grounds that Sutherland engaged in fraudulent misconduct and alternatively that the case presented exceptional circumstances. Fed. R. Civ. P. 60(b). While that motion was pending, and using the same cause number, Adam filed a motion to appoint an arbitrator under 9 U.S.C. § 5 on December 14, 2011. Adam argued in part that Spellane's disqualification by the ICDR was procedurally faulty because Sutherland failed to make a timely challenge to the appointment in accordance with Article 8 of the ICDR Rules. Adam further contended that the challenge to Spellane lacked

5

No. 12-10760

a valid, substantive basis. Adam also argued that the procedure followed by the ICDR to appoint a replacement arbitrator was error because Articles 6 and 10 of the ICDR Rules required one of the parties to provide a written request before such appointment could be made. Adam requested that the district court remove two of the appointed arbitrators, reinstate Spellane, and order the third arbitrator be appointed by Sutherland's appointed arbitrator and Spellane.

On June 18, 2012, the district court determined that the parties agreed the method for appointing arbitrators had been established in the Master Services Agreement, which incorporated the ICDR Rules through the contractual adoption of the American Arbitration Association's rules. The court concluded Adam presented procedural questions which were left to the discretion of the ICDR to decide. All relief was denied. Adam timely appealed.

The parties have informed the court that a related action is pending in the United States District Court for the Western District of New York. On August 2, 2012, the arbitration panel issued a final award in favor of Sutherland, and Sutherland subsequently filed a petition to confirm the arbitration award in accordance with 9 U.S.C. § 9 on August 16. On December 21, 2012, the federal district court in New York entered an order to hold the petition in abeyance until this court issues a decision.

## DISCUSSION

*I. Jurisdiction*

Sutherland challenges the district court's subject matter jurisdiction over Adam's post-judgment motion to appoint an arbitrator under 9 U.S.C. § 5. Though the court denied the motion, had there been no jurisdiction, the order should be vacated. "We exercise plenary, de novo review of a district court's

6

No. 12-10760

assumption of subject matter jurisdiction." *Local 1351 Int'l Longshoremens Assoc. v. Sea-Land Serv. Inc.*, 214 F.3d 566, 569 (5th Cir. 2000).

Sutherland invoked the federal court's diversity jurisdiction when it removed Adam's state-court application to stay the arbitration. 28 U.S.C. § 1332. Nevertheless, Sutherland argues the district court lacked jurisdiction to consider Adam's motion because the case had already been dismissed,[1] and in the motion, Adam did not state a basis for the district court's jurisdiction. Nothing suggests nor is even alleged that the diversity of the parties' citizenship or the amount in controversy that originally supported jurisdiction has since changed. Sutherland's contention is, in effect, an attack on the procedural method by which Adam sought an appointment of an arbitrator by post-judgment motion instead of an independent action.

It is prudent for parties to arbitration agreements to "insist upon the enforcement of their contractual rights" and compliance with 9 U.S.C. § 5. *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 673-74 (5th Cir. 2002). A litigant may seek an arbitrator's appointment under Section 5 by filing an independent action. *E.g.*, *BP Exploration Libya Ltd. v. ExxonMobil Libya Ltd.*, 689 F.3d 481, 486-87 (5th Cir. 2012). Instead of following that procedure, Adam requested appointment by filing a post-judgment motion in the original suit. The motion was filed a few weeks after Adam filed a Rule 60(b) motion in the same dismissed suit.

Disputing the validity of this procedure, Sutherland points out that a district court does not have continuing jurisdiction to enforce a settlement after

---

[1] In the final judgment entered on October 18, 2010, the district court dismissed all claims for resolution by arbitration. Although Section 3 of the Federal Arbitration Act directs district courts to stay pending arbitration, we are bound by our precedent which states that dismissal is appropriate "when *all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

No. 12-10760

parties reached a settlement agreement under Federal Rule of Civil Procedure 41(a)(1) and executed a stipulation, and the court then dismissed. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 376-77 (1994). In that case, a party to earlier diversity litigation in the same court returned to that court after a final order of dismissal in order to enforce a provision in the settlement agreement requiring another party to return certain files. *Id.* at 376-77. The district court held it had ancillary jurisdiction over the claim. *Id.* The Supreme Court determined the district court lacked jurisdiction because there was no independent basis for jurisdiction, retention of jurisdiction, or an incorporation of the settlement agreement into the order. *Id.* at 379-82.

The Supreme Court held there was no ancillary jurisdiction because the original and subsequent claims were not factually interdependent, nor was the district court's enforcement order necessary to give effect to the previous decree. *Id.*, 511 U.S. at 379-81. In the previous dismissal of the complaint and cross-complaint, the district court signed the parties' proposed order with no reservation of jurisdiction or incorporation of the agreement. *Id.* at 376-77. Similarly in the prior proceedings in our case, the final judgment of October 18, 2010, dismissed all claims "for resolution by arbitration." When that judgement was amended on May 26, 2011, there was no suggestion that the suit was no longer dismissed.

The new filing in *Kokkonen* was not the original dispute revived with all the jurisdictional prerequisites still in place. The new claim sought enforcement of one part of the previous settlement regarding files and did not re-urge original claims in the litigation. *Id.* at 376-77, 381. Consequently, the federal court did not have an "independent basis for federal jurisdiction." *Id.* at 382.

No. 12-10760

The case before us is much different. No settlement or final resolution was reached. Instead, the district court held that one of the contracts between the parties provided for arbitration of the dispute. The dismissal effectively required the parties to arbitrate their controversy and not rely on a court to resolve it, at least unless the arbitrator said the claim was not arbitrable. The post-judgment motion sought to enforce that earlier decision by showing that the pursuit of arbitration was failing due to the fault of one of the parties. By the time of the motion, the arbitration panel had issued an order regarding the procedure for arbitration. No arbitration hearing was held until after the district court denied Adam's motion. We consider these facts about the status of the arbitration to be relevant to the merits of the motion but to have little effect on the district court's jurisdiction to consider whether its earlier order effectively requiring arbitration was being thwarted.

We find guidance in *Kokkonen* from the Court's description of the two principal purposes for ancillary jurisdiction:

> Generally speaking, we have asserted ancillary jurisdiction (in the very broad sense in which that term is sometimes used) for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.

*Id.* at 379-80 (citations omitted).

We conclude that the second *Kokkonen* category applies here for the following reasons. On May 26, 2011, the district court amended its original order, but we conclude that the case remained dismissed in order that arbitration could occur. It is true that the court did not in any of its orders

9

No. 12-10760

specifically require arbitration, but the reason for the dismissal was so that the parties would proceed to resolve their dispute in an arbitral forum. We do not consider the Rule 60(b) motion that Adam filed on November 18, 2011, to be relevant in our jurisdictional analysis. None of what is in the appeal to this court arises from the Rule 60(b) allegations. Instead, the current appeal is from what began with Adam's motion to appoint an arbitrator under Section 5 on December 14, 2011. The argument was that the previous judgment dismissing the case in favor of arbitration was being thwarted by a lapse in appointment. The arbitration was on the original issues of the case, and the jurisdiction over whether that authority needed to be vindicated and the decree effectuated was ancillary to that of the original proceedings.

The judgment dismissing Adam's initial lawsuit operated, in all practical effect, as the functional equivalent of an order compelling arbitration between these parties.[2] We conclude that ancillary jurisdiction existed to allow the district court later to evaluate whether the dismissal that allowed the dispute to be taken to arbitration was being thwarted. The district court eventually

---

[2] A decision from another circuit has relevant similarities. There, the federal court litigation began as an employment discrimination action. *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 702 (2d Cir. 1985). Before the suit was filed, the employer had alleged the plaintiff employee had been overpaid and demanded arbitration. *Id.* at 701. In the federal suit, the employee moved to enjoin the arbitration, but the court denied the motion. *Id.* at 701-02. The arbitration resulted in an award in favor of the employer. *Id.* at 702. The employee then amended her federal action, deleting the objections to arbitration and leaving her claims of sexual harassment. *Id.* The employer moved to confirm the arbitration award; the district court did so. *Id.* The discrimination claim remained pending. *Id.* at 703.

On appeal, the plaintiff argued the district court did not have jurisdiction to confirm the award partly because the parties did not, as set out in 9 U.S.C. § 9, explicitly agree to have "a judgment of the court . . . entered upon the award." *Id.* at 705. Nevertheless, the court determined there was jurisdiction to confirm the award because the "order denying [the employee's] motion to stay arbitration was essentially the equivalent of an order by the district court to compel arbitration." *Id.*

decided it had no role to play, but we find no absence of jurisdiction for making that evaluation and reaching that conclusion.

The dissent relies on decisions in which we have applied *Kokkonen* in the context of the enforcement of settlement agreements. *SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 460-61 (5th Cir. 2010); *Hospitality House, Inc. v. Gilbert*, 298 F.3d 424, 428, 430 (5th Cir. 2002). The dismissals in those two lawsuits had been pursuant to a rule permitting a plaintiff to dismiss a case voluntarily. *SmallBizPros*, 618 F.3d at 460; *Hospitality House*, 298 F.3d at 430 n.6 (citing Fed. R. Civ. P. 41(a)(1)(A)(ii)). The dismissal generally becomes effective upon its filing, and no court order is required. *SmallBizPros*, 618 F.3d at 461. If a court order is nonetheless entered, a district court would have jurisdiction to enforce the settlement underlying the dismissal only if the dismissal order expressly retained jurisdiction or the settlement terms were incorporated in the order. *SmallBizPros*, 618 F.3d at 462-64; *Hospitality House*, 298 F.3d at 430-32.

A significant procedural difficulty in both cases was that because the voluntary dismissal was immediately effective upon its filing by the plaintiff, the plaintiff had to delay filing the dismissal until the court order itself was filed or else make the filed dismissal contingent upon the later court order; if neither option occurred, then the case would be dismissed and the later court order necessary for enforcement jurisdiction would be a nullity. *E.g., SmallBizPros*, 618 F.3d at 462-63. Neither dismissal in the present case was voluntary. The dismissal on October 18, 2010 was under Rule 12(b)(6) and very much over the plaintiff's objection. On May 26, 2011, the district court amended its earlier judgment but still dismissed in order that arbitration could occur.

To be clear, the analysis of those two precedents did not limit *Kokkonen*'s reach to cases that had been voluntarily dismissed. The Supreme Court and our two cited precedents each dealt with enforcement of a settlement and the need for the district court to have in a valid way earlier expressed its retention of jurisdiction to enforce it. If the district court did not, then there would have to be some other and independent basis for jurisdiction. *Kokkonen*, 511 U.S. at 382.

The Supreme Court acknowledged that "ancillary jurisdiction properly exists where it enables a court 'to manage its proceedings, vindicate its authority, and effectuate its decrees . . . .'" *SmallBizPros*, 618 F.3d at 461-62 (quoting *Kokkonen*, 511 U.S. at 380). We see a significant distinction between deciding that a court is not vindicating its authority when it is enforcing a contract of settlement which the court did not require but only acceded to by dismissal, and deciding that a district court is vindicating its authority by requiring parties to honor the court's decision that an obligation to arbitrate necessitated involuntary dismissal of a case. The final judgment of October 2010 stated the claims were "dismissed for resolution by arbitration." In May 2011, the district court noted in its order on Adam's motion for reconsideration, that the court's October 2010 "finding that this case belongs in arbitration" was not being challenged. The order responded to some arguments by stating they would be for the arbitrator. We have held that the district court effectively if only implicitly ordered arbitration. If a party interferes with the carrying out of an order to arbitrate, there is effectuation and vindication inherent in the district court entering relevant new orders.

The dissent also relies on decisions from the other circuits to support its point that the dismissal order must reveal an intent to retain jurisdiction. Those

cases also apply to enforcement of terms of a stipulated agreement. *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 641 (6th Cir. 2001); *Washington Hosp. v. White*, 889 F.2d 1294, 1297-99 (3d Cir. 1989).

The Supreme Court emphasized in *Kokkonen* that what one party sought was an enforcement of settlement terms, which was "more than just a continuation or renewal of the dismissed suit." 511 U.S. at 378. We are not considering a settlement agreement. Our jurisdictional question is to be answered in the context of a court's dismissal of a case so that it will be arbitrated. The Supreme Court in *Kokkonen* allowed the use of ancillary jurisdiction to "enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 380. We conclude that is what occurred here.

## II. Merits

Here, the district court's denial of Adam's motion at this stage of the proceedings constituted "a final decision with respect to an arbitration." 9 U.S.C. § 16(a)(3); *see BP Exploration*, 689 F.3d at 489. Accordingly, we exercise appellate jurisdiction, and we review the district court's decision *de novo*. *See BP Exploration*, 689 F.3d at 489-90.

Adam first argues the district court erred in refusing to appoint an arbitrator because Adam provided proof that the parties had reached a lapse in naming an arbitrator after the ICDR sustained Sutherland's objection to Spellane, and Adam did not comply with the ICDR's deadlines for appointing another arbitrator. Specifically, Adam contends the parties' agreement provided

No. 12-10760

for a specific procedure in which each party would select its choice arbitrator and that such procedure "broke down" when Adam insisted on appointing Spellane.

The Federal Arbitration Act provides, in part:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but . . . if for any other reason there shall be a lapse in the naming of an arbitrator . . . , then upon the application of either party to the controversy the court *shall* designate and appoint an arbitrator . . . .

9 U.S.C. § 5 (emphasis added).

Caselaw has described a "lapse" under Section 5 as "a lapse in time in the naming of the arbitrator or in the filling of a vacancy on a panel of arbitrators, or some other mechanical breakdown in the arbitrator selection process." *BP Exploration*, 689 F.3d at 491-92 (quotation marks omitted). In *BP Exploration*, the three parties involved had "reached an impenetrable deadlock over the appointment of arbitrators" despite the presence of an appointment method because such method did not contemplate the existence of three parties to the controversy. *Id.* at 492. The party initiating arbitration appointed an arbitrator in accordance with the agreement. *Id.* The co-respondents were then required to appoint arbitrators. *Id.* The agreement required both a total of three arbitrators and the appointment of a neutral arbitrator "at the unanimous choosing of the party-appointed arbitrators." *Id.* With each party having appointed an arbitrator, the parties could not comply with the agreed-to appointment method.

Here, there was no mechanical breakdown that required the court's intervention. Instead, it was Adam's own noncompliance with the ICDR's procedural requirements that prompted the ICDR to appoint an arbitrator, an

14

No. 12-10760

appointment which the ICDR determined was in accordance with its rules. Article 36 of the ICDR Rules states an arbitral tribunal or administrator shall interpret these rules.

Further, the facts of this case show no "lapse" occurred under Section 5. At the time of Adam's filing its motion to appoint an arbitrator, an arbitration panel had been empaneled, and a final hearing date was set to resolve the underlying dispute. Those facts stand in contrast to those of *BP Exploration*, where "[t]he parties attempted to resolve the impasse for months, floating numerous ideas to no avail." *Id.* Consequently, we reject Adam's argument on appeal that the district court was required to intervene on grounds that a lapse had occurred in the appointment process.

Adam next argues the district court was required to reach the merits of Adam's request to reinstate Spellane because Section 5 provides: "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed." More specifically, Adam contends the parties' agreement provided that they should be able to appoint their choice arbitrators; further, Adam argues the agreement imposed no time limit. Adam thus concludes the ICDR did not follow the agreement's method of appointing arbitrators and the district court was required to intervene. We disagree for the following reasons.

First, by contesting the process used to select the arbitrators, Adam has advanced a "challenge[] that essentially [goes] to the procedure of arbitration." *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 488 (5th Cir. 2002). The law presumes that "procedural questions" are for an arbitrator to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

15

No. 12-10760

Adam nevertheless contends that such presumption does not apply because the parties contractually agreed otherwise. We disagree with this reasoning on these facts. The parties' arbitration agreement stated that a "dispute or controversy between the Parties with respect to the interpretation or application or enforcement of any provision of this Agreement . . . shall be resolved as provided in this Section." That section required an initial informal attempt to resolve any dispute. If the dispute could not be resolved, the parties were required to refer the dispute for resolution by arbitration. In addition to explaining the arbitrator-selection process, the parties' contract incorporated the rules of the American Arbitration Association, and consequently the ICDR Rules, into the arbitration section of their agreement. The ICDR Rules provide for the challenging and replacing of arbitrators. Thus, Adam's appellate argument that the *Howsam* presumption disappears because of Adam's interpretation that the parties agreed otherwise is unavailing.

Second, at the time Adam challenged the arbitrator-selection process in the Texas district court, three arbitrators were already empaneled, and no arbitration award had yet been made. The court had no statutory authority to reach the merits of Adam's argument after the arbitration process had proceeded but "prior to issuance of the arbitral award." *Gulf Guar. Life Ins. Co.*, 304 F.3d at 488, 490; *see Brook*, 294 F.3d at 673-74.

Adam advances a related argument that the district court was required to appoint an arbitrator, which necessarily implicates Adam's request in the district court to remove two arbitrators. This circuit has explained, though, the Federal Arbitration Act "does not provide for removal of an arbitrator from service prior to an award, but only for potential vacatur of any award." *Gulf*

16

No. 12-10760

*Guar. Life Ins. Co.*, 304 F.3d at 490.  Adam did not, and could not have at the time, move for a vacatur of an award in the district court.  Therefore, we cannot conclude the district court erred in denying the motion to appoint an arbitrator based on this argument.

Last, Adam contends the ICDR's disqualification of Spellane was improper because Sutherland's challenge to Spellane was untimely under Article 8 of the ICDR Rules, and Sutherland failed to allege a proper basis for disqualification. Adam also argues the appointment of Spellane's replacement was improper under Articles 6 and 10 of the ICDR Rules because the parties' agreement did not provide restraints on the amount of time each party had to appoint an arbitrator.  These contentions amount to procedural challenges, and the language of the parties' arbitration agreement, as well as the law's presumption, mandates these issues be resolved by arbitration.  *See Howsam*, 537 U.S. at 84-85; *Gulf Guar. Life Ins. Co.*, 304 F.3d at 488.

AFFIRMED.

EMILIO M. GARZA, Circuit Judge, dissenting:

I dissent from the majority's holding that the district court had ancillary jurisdiction to decide Adam's post-judgment motion to appoint an arbitrator.

The district court did not have ancillary jurisdiction over Adam's motion. A federal court does not automatically retain jurisdiction to hear a motion to enforce a settlement agreement in a case it has previously dismissed. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380–82 (1994). The touchstone of whether the district court retains jurisdiction post-dismissal to enforce the terms of a settlement agreement is whether it is possible to infer such an intention from its dismissal order. *SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 464 (5th Cir. 2010) (holding in order to retain jurisdiction to enforce parties' settlement agreement district court's dismissal order "must expressly retain jurisdiction or must otherwise embody the terms of the agreement within the dismissal order so that any violation of the terms would also be a violation of the court's order."); *Washington Hosp. v. White*, 889 F.2d 1294, 1298–99 (3d Cir. 1989) ("Although a district court does not have continuing jurisdiction over disputes about its orders merely because it had jurisdiction over the original dispute, a stipulated agreement signed by the court does allow a district court to retain jurisdiction . . . . *All that is necessary is that it be possible to infer that he did intend to retain jurisdiction.*") (emphasis added). In *Kokkonen*, in holding the district court lacked jurisdiction to enforce the settlement agreement, the Court placed great weight on the fact the dismissal order did not even reference the settlement agreement. 511 U.S. at 377 ("The Stipulation and Order did not reserve jurisdiction in the District Court to enforce the settlement agreement; indeed, it did not so much as refer to the settlement agreement."); *See RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 643 (6th Cir. 2001) ("*Kokkonen* only requires a reasonable indication that the court has retained jurisdiction, such as a provision retaining jurisdiction over the

settlement agreement. In this way, the Court intended to avoid subjective interpretations of what a district court intended to accomplish through its order of dismissal . . . .").[1]

In *Hospitality House, Inc. v. Gilbert,* we examined whether a dismissal order's reference to an agreed motion to dismiss sufficed to incorporate the parties' settlement agreement into the court's dismissal order where the motion to dismiss expressly incorporated the settlement agreement. 298 F.3d 424, 433 (5th Cir. 2002). We held that mere mention of the agreed motion to dismiss in the dismissal order did not suffice to incorporate the settlement agreement. *Id.* We further held that under *Kokkenen* and its progeny, in order for the district court to retain ancillary jurisdiction to enforce the terms of the parties' settlement agreement, the dismissal order must clearly indicate the court's intent to make the terms of the settlement agreement part of its dismissal order. *Id.*

Here, the district court's dismissal order did not indicate an intention to retain jurisdiction over the parties' dispute. After the district court determined that the parties agreed to arbitrate their dispute, the district court issued its final judgment and order dismissing the case, stating, "Plaintiff's claims are

---

[1] In *Washington Hospital*, unlike in *Kokkonen,* the stipulated agreement signed by the district court clearly implied the district court intended to retain jurisdiction to enforce the terms of the settlement agreement:

> We think there is little question that the district court retained jurisdiction to resolve allegations of non-compliance with the stipulated agreement. Paragraph nine of the court-approved stipulation states: "Plaintiffs will make no further effort to have their claims adjudicated or to request judicial relief upon those claims except insofar as questions or issues are raised: (1) by any failure of Defendants to comply with the terms of this Agreement."

889 F.2d at 1299. The Third Circuit thus held under *Kokkonen* the district court had jurisdiction to enforce the terms of the parties' agreement. *Id.*

dismissed for resolution by arbitration." Adam did not appeal the decision, the arbitration proceeded, and the underlying case was closed. It was not until six months after the deadline for Adam to appeal the final judgment passed that Adam filed the instant motion to appoint an arbitrator. Just as the mere mention of the agreed motion to dismiss in *Hospital House* did not suffice to indicate an intention to retain jurisdiction over disputes arising out of the parties' settlement agreement, so also did mere mention of the arbitration proceedings in the dismissal order fail to indicate an intention to retain jurisdiction over disputes arising out of the arbitration. As the district court's dismissal order did not imply the district court intended to retain any jurisdiction over the parties' dispute, under *Kokkonen*, the district court did not have ancillary jurisdiction to reach the merits of Adam's motion.[2]  *Cf. Bell v. Schexnayder*, 36 F.3d 447, 448 (5th Cir. 1994) (holding district court had properly retained jurisdiction by including language in dismissal order that gave parties right to reopen judgment if settlement was not consummated within sixty days).

---

[2] *Kokkonen* implies that where there is an independent basis for jurisdiction over a post-judgment motion ancillary jurisdiction is unnecessary. "Enforcement of the settlement agreement, however, whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen*, 511 U.S. 375 at 378. Here, however, there is no independent basis for jurisdiction over Adam's post-judgment motion merely because the district court had diversity jurisdiction over the dismissed suit. Adam did not file a new complaint stating the diversity of the parties and the dollar amount in controversy. Moreover, Adam's motion to appoint an arbitrator was not a continuation or renewal of the dismissed suit. In the dismissed suit Adam sought to stay the arbitration and addressed the question of whether the parties had an obligation to arbitrate their dispute. By contrast, Adam's motion does not renew the question of whether the parties were bound to arbitrate their dispute but rather raises a new question of arbitration procedure.

No. 12-10760

The majority holds the district court had ancillary jurisdiction over Adam's motion under *Kokkonen* because jurisdiction was necessary to effectuate the court's decree, *ante*, at 10,  but the court's decree was merely to dismiss the case.[3]  Had the district court dismissed Adam's motion for lack of jurisdiction, Adam would have had to either file an independent action, or be left to resolve the dispute in arbitration, where it was resolved.[4]  The majority holds that by deciding Adam's motion to arbitrate the district court was "vindicating its authority by requiring [the] parties to honor the court's decision that an obligation to arbitrate necessitated involuntary dismissal of [the] case." *Ante*, at 12. This is unconvincing.  At the time Adam filed the motion to appoint an arbitrator in the district court, the arbitration panel had already issued its final judgment.  Adam's motion was part of a collateral attack on that judgment.[5]  The district court did not "effectuate" its dismissal order by reentering the parties' dispute after the arbitration panel issued its final judgment.  Accordingly, the

---

[3] In support of its holding that the district court had jurisdiction the majority cites *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 706 (2d Cir. 1985), *ante*, at 10, but this case is readily distinguishable as there the district court *stayed* the case pending arbitration rather than dismissed the case.  By staying the case pending arbitration, the district court clearly indicated an intent to retain jurisdiction over the underlying dispute. *Smiga*, 766 F.2d at 705. Here, by contrast, the district court dismissed Adam's claims for resolution by arbitration without indicating any intent to retain jurisdiction over Adam's claims.

[4] Sutherland filed a separate action to confirm the arbitration award in the United States District Court for the Western District of New York, and that court stayed the proceeding pending the result of this appeal.  The fact a federal district court in Texas decided Adam's motion to appoint an arbitrator and a district court in New York will decide whether to confirm the arbitration award underscores the strange procedural posture of this case.

[5] Adam simultaneously filed a motion to vacate the arbitration panel's final judgment on grounds that Sutherland engaged in fraudulent misconduct and the case presented exceptional circumstances.

No. 12-10760

majority's conclusion that the district court had ancillary jurisdiction over Adam's post-judgment motion is erroneous.

Respectfully, I dissent.