Jerry **PATTERSON** et al.,
Plaintiffs-Appellants,

v.

Ellis C. **MacDOUGALL**, Director, Georgia
State Board of Corrections, Atlanta,
Georgia, Defendant-Appellee.

No. 73-3237.

United States Court of Appeals,
Fifth Circuit.

Jan. 8, 1975.

**2**

Edward C. Stone, Atlanta, Ga. (Court-appointed), for plaintiffs-appellants.

Arthur K. Bolton, Atty. Gen., William F. Bartee, Jr., Courtney Wilder Stanton, Asst. Attys. Gen., Atlanta, Ga., for defendant-appellee.

Before TUTTLE, WISDOM and GEE, Circuit Judges.

WISDOM, Circuit Judge:

On May 11, 1973, Jerry Patterson and 21 other inmates of a Georgia prison, the Diagnostic and Classification Center, Jackson, Georgia, filed a pro se complaint in the United States District Court for the Northern District of Georgia alleging that Ellis C. MacDougall, the defendant, Director of the Georgia State Board of Corrections, had deprived them or caused them to be deprived of rights guaranteed under the first, fourth, fifth, sixth, seventh, eighth, ninth, twelfth, thirteenth, and fourteenth amendments of the United States Constitution. They asked for a declaratory judgment, injunctive relief, and damages, citing 28 U.S.C. §§ 2201, 1343(3) and (4); 42 U.S.C. §§ 1983 and 1985; and 18 U.S.C. § 242. On the same day suit was filed, the district court dismissed the complaint, sua sponte, without benefit of responsive pleadings or of a hearing.

In its order, the district court "[l]et the petition be filed for purposes of dismissal". The court gave as the reason for the dismissal, that "The defendant is not a proper party . . . The defendant does not implement the state laws and regulations at the Jackson, Georgia facility. It is the warden of that institution who is charged by law with exercising the day to day supervision and control of the prison." "The designated defendant is not a proper party." Accordingly, the court "dismissed without prejudice to the rights of the plaintiffs to refile against the present parties and in the proper district." The district judge pointed out that the Georgia Diagnostic & Classification Center is located in the Middle District of Georgia and stated that "if the warden also resides in that District jurisdiction would be in the United States District Court for the Middle District of Georgia and not this court [the Northern District]."[1]

**I.**

Pro se complaints are to be read with especial liberality. E. g., Haines v. Kerner, 1972, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652; Goff v.

---

1. The appellants initially sought relief under 42 U.S.C. § 1985, as well as under § 1983. However, this ground was not urged on appeal, and it is not necessary that we consider it here.

Jones, 5 Cir. 1974, 500 F.2d 395; Dickinson v. Chief of Police et al., 5 Cir. 1974, 499 F.2d 336. Dismissal is appropriate only if the district court, so reading the complaint, might conclude with assurance that it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 1972, 404 U.S. at 521–522, 92 S. Ct. 596, 30 L.Ed.2d 652; Conley v. Gibson, 1957, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80. For this purpose, the allegations of the complaint are accepted as true, Cruz v. Beto, 1972, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263.

The complaint in this case consisted of 73 single-spaced typed pages and 70 pages of exhibits. Some of the charges of mistreatment are frivolous. But many are of a serious nature involving violations of civil rights of constitutional dimensions. The alleged mistreatment was pervasive and long-continued; it took place at Reidsville State Prison and at the Jackson Center. If the allegations of the complaint are accepted as true, the plaintiffs show acts and practices that justify damages against the persons directly responsible and declaratory and injunctive relief against the persons under a duty to prevent the occurrence and continuation of conditions which generated the complaint.

This complaint alleged that the prison authorities had on various occasions beaten, kicked, maced, and tear-gassed the plaintiffs,[2] and that they had discriminated against the plaintiffs on the basis of race. The complaint also charged that the authorities had placed the plaintiffs in segregated (solitary) confinement without explanation or ap-

parent reason. The place of confinement was infested with rats, roaches, and lice. There, the plaintiffs were forced to sleep on the floor. They were denied beds, although there were beds stacked outside the cells. The bedding they were given consisted of a single soiled blanket for each man. There was no artificial light, and whatever toilet facilities were available were smeared with human waste. The complaint also charged that prison authorities had refused to transmit the plaintiffs' outgoing mail, particularly their attempted correspondence with the press.

II.

These allegations and there are many others we do not catalogue—state a claim for relief under §§ 1983 and 1985 against the defendant MacDougall, both in damages and for injunctive or declaratory relief. The appellee's counsel conceded on oral argument that the dismissal was not justifiable under Rule 12(b) (6), for failure to state a claim. He was correct in doing so.

In the case of James 58X Reese v. MacDougall, Director, Civil Action No. 18770, N.D.Ga., the plaintiff, who is also a plaintiff in the instant case, brought suit against MacDougall, the defendant in the instant case. The allegations of mistreatment are very similar to those made in the subject complaint. In its order of August 9, 1973, the district court described the complaint as follows:

Without detailing the lengthy and specific allegations, it will suffice at this point to note that the asserted deprivations of constitutionally protected rights range from cruel and unusual punishment, to a denial of equal pro-

---

2. A sample paragraph of the complaint reads: "Inmate Eddie Ruffin was shot in the face with tear gas, beaten unmerciful [sic], kicked in the face and in the side, shot with pellet gun and beaten with night sticks. Inmate Rogers Sanders were [sic] beaten by clubs shot in the fact with tear gas, kicked in the side and a hole was knocked in his head. Inmate Rogers Sanders was forced to strip naked and while his body was mingled [sic] and torn and still

bleeding with the guards standing around and call him nigger, he (inmate Sanders) was forced to wipe his blood from the wall."

"Inmate Charlie Riggins even though the institution is aware of a mental illness suffered by this inmate, he has been repeatedly beaten by Sgt. Kelso and his assistant. Inmate Riggins is presently in a critical condition of shock and goes long period [sic] of time without uttering a sound."

tection by racial discrimination within the prison facilities, to disciplinary sanctions and (punitive) segregation imposed without due process. Still, throughout the voluminous complaint, the essence of the claim appears to be that all these various forms of alleged oppression have effectively deprived the plaintiff of his right to the free exercise of his religion.

The court stated:

Here, however, although many of the allegations concern behavior of persons other than the named defendant, the plaintiff appears to attribute much of the alleged oppression of his religious freedom directly to actions by MacDougall. On the basis of these charges, this suit cannot be dismissed summarily for lack of a proper party defendant.

A suit based upon the incidents described by the plaintiff involving various other parties acting in their official capacities as wardens or employees at the state institutions in Reidsville and Jackson would be beyond the venue of this court. 28 U.S. C. § 1391(b). However, a 42 U.S.C. § 1983 action against MacDougall, assuming he is a proper defendant, would be properly brought in this district.

Accordingly, the court directed the defendant MacDougall to respond to the complaint.

Here we find that the complaint alleges that MacDougall "gave the order" placing the plaintiffs in segregation, and "ordered the cruel and unusual punishment" inflicted on the plaintiffs.

We note, too, that the prisoners made known their grievances to MacDougall in an eye-ball to eye-ball meeting following a so-called "rebellion". As a result of this meeting MacDougall gave the following handwritten and signed statement dated June 3, 1973:

"I will

1. Give a copy of grievences to Press.

2. There will be no discipline or prosecution of what incidents have happened to this time.

3. I will appoint an Ombudsman.

4. I will interview and follow up every interview a answer of action. This will be done tonight!"

This statement demonstrates that MacDougall, as well as the prisoners, regarded himself as the officer charged with overall responsibility for supervising prison conditions. The complaint is prolix, unintelligible in some places, and artlessly drawn throughout, but there is no doubt that it alleges MacDougall's personal responsibility both because of his direct involvement and because of his failure to act when improper prison conditions were brought to his attention.

■ It may well be that the prison wardens are "solely responsible for the administration of their institution in accordance with Georgia law and with the rules and regulations of the State Board of Corrections." Georgia Rules of State Board of Corrections, Ch. 125–2–1–.-04(1)(a). They would therefore be proper parties in this action. But, this same basic regulation making a warden responsible for the administration of his institution also states that "in no case shall the warden be relieved of his direct responsibility to the Director of Corrections for implementation of and compliance with the rules and regulations." Ch. 125–2–1–.04(1)(b). True, it is the State Board of Corrections that adopts the "rules and regulations governing the conduct and the welfare of employees of the State institutions operating under its authority. . . ." Ga.Code § 77–307. And it is the Board that is charged with regulation of prisoner punishment, subject to a prohibition against "all forms of corporal punishment. . . ." Ga.Code § 77–311. But the Director of Corrections is the chief administrative officer, in whom is vested the power and authority to "direct and supervise all the administrative activities of the State Board of Corrections" and in whom is placed the general re-

sponsibility to "perform such other duties and functions necessary or desirable to carry out the intent of [Chapter 77–3]." Ga.Code § 77–305. Whatever liability may attach to members of the Board or to wardens, the Georgia statutory scheme seems to contemplate that the Director of Corrections is the individual charged with personally supervising all prisons in the state. In this case as in *James 58X Reese,* Ellis MacDougall was a proper party defendant.

### III.

The appellee contends that, even if dismissal under Rule 12(b)(6) is unjustified, dismissal is proper under Rule 19(b), Fed.R.Civ.P., for failure to join the warden, an indispensable party. This contention is based on the reasoning that "the overwhelming thrust of the complaint is for injunctive relief"; that it is "the warden [not MacDougall] who is charged with exercising the day-to-day supervision and control of the prisons"; that having determined that the warden of the institution should be joined to accord complete relief among the parties, and having determined that the warden could not be made a party without destroying venue, the lower court was authorized in its discretion to dismiss the action, "the absent person being thus regarded as indispensable."

■ This reasoning, we conclude, misconceives the import of Rule 19, Fed.R.Civ.P. Even assuming for present purposes that there is a necessary party not joined, and that venue would be improper as to that party, the proper remedy under Rule 19 is not dismissal but joinder by order of the court.[3] See English v. Seaboard Coast Line Railroad Co., 5 Cir. 1972, 465 F.2d 43; Ferguson v. Thomas, 5 Cir. 1970, 430 F.2d 852; 1 Moore's Federal Practice ¶ 19.19 at 2589; 7 Wright and Miller, Federal Practice and Procedure §§ 1609, 1610, and 1611 at 83, 104–05, and 108 (1972). If the party so joined has a valid objection to the venue and chooses to assert it, he may be dismissed from the action. See Advisory Committee Note to Federal Rule of Civil Procedure 19. Then the court may properly consider whether under Rule 19(b) the action should proceed in his absence. See generally, Provident Tradesmens Bank & Trust Co. v. Patterson, 1968, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936; English v. Seaboard Coast Line Railroad Co., 5 Cir. 1972, 465 F.2d 43.

### IV.

Although we hold that a claim for relief was stated by the complaint, it appears that after the complaint was filed, Ellis MacDougall resigned his position as Director of the Georgia State Board of Corrections to become the State Commissioner of Offender Rehabilitation.[4] On remand, the district court should determine whether the claims for injunctive relief against MacDougall for a declaratory judgment are now moot and whether MacDougall's successor should be substituted as a defendant to the claims for injunctive and declaratory relief. See Rule 25(d)(1), Fed.R.Civ.P.

3. "[I]rrespective of the propriety of venue as to a party under revised Rule 19(a), 'should be joined as a party; and if he has not been joined, the court should order him to be brought into the action. If a party joined has a valid objection to the venue and chooses to assert it, he will be dismissed from the action'. Advisory Committee Note to Fed.R.Civ.P. 19." 1 Moore's Federal Practice at ¶ 19.07(1) n. 10, ¶¶ 0.140 [1.–2] and 0.146 [6]; ¶ 19.19. Ordinarily, the court should not anticipate an objection when it may be waived. "The effect of the [1966] amendment [to Rule 19] is that the present rule does not require the court to make an independent venue determination before ordering the absentee's joinder." 7 Wright and Miller, Federal Practice and Procedure, § 1610 at 104 (1972).

4. The defendant-appellee's brief advised this court that MacDougall resigned as Director of the Georgia Department of Corrections effective December 31, 1973. In its Memorandum Opinion of May 11, 1973, however, the district court treats the resignation as already effective. The complaint was filed May 11, 1973.

See also, Spomer v. Littleton, 1974, 414 U.S. 514, 94 S.Ct. 685, 38 L.Ed.2d 694.[5]

We suggest that the district court appoint counsel to represent the plaintiffs so that an amended complaint may be filed to clarify the issues.

Accordingly, the judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion.

5. We direct attention to Spomer v. Littleton, but caution that the facts of that case differ significantly from the facts alleged here. In *Spomer*, the wrongs alleged were personal to the defendant, and there was no showing that his office or staff was implicated in the alleged wrongdoing. Here, on the contrary, the wrongdoing is alleged to permeate many levels of prison personnel, and, if proved, would likely require relief to correct institutionalized abuses.