**REVISED MAY 15, 2015**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-20521

United States Court of Appeals
Fifth Circuit

**FILED**
May 1, 2015

Lyle W. Cayce
Clerk

In re:  AMERIJET INTERNATIONAL, INCORPORATED,

Petitioner

Consolidated With 14-20522

AMERIJET INTERNATIONAL, INCORPORATED,

Plaintiff - Appellant

v.

ZERO GRAVITY CORPORATION,

Defendant - Appellee

Appeals from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and KING and ELROD, Circuit Judges.

PER CURIAM:

Petitioner and Plaintiff-Appellant Amerijet International, Inc., appeals the district court's anti-suit injunction.  Amerijet has also petitioned this court for a writ of mandamus setting aside the district court's order reopening this case after the parties purportedly settled their dispute.  Amerijet alleges that

No. 14-20521

the district court lacked subject matter jurisdiction as it erred in setting aside Amerijet's voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(i).    We conclude that a pre-removal answer meeting the requirements of state law suffices to preclude voluntary dismissal under that rule.  For the following reasons, we AFFIRM the injunction issued by the district court and DENY the petition for a writ of mandamus.

I.

Zero Gravity Corp. owns a Boeing 727 aircraft that it uses to provide parabolic flights that simulate a weightless environment.  Zero Gravity provides such flights as part of its business both to members of the public, for entertainment, and to NASA, for experiments in a weightless environment. Amerijet International, Inc., is an airline company that operates specific aircraft for specific types of flights.

Zero Gravity and Amerijet entered into a contract under which Amerijet operated the parabolic flights for Zero Gravity and provided maintenance services (the "Management Services Agreement").    Amerijet leased the aircraft's engines to Zero Gravity under a separate contract (the "Engine Lease").  The Management Services Agreement stated that it would expire on March 31, 2011, unless terminated earlier by either party on six months' notice.  The Management Services Agreement also provided: "[t]hereafter, the term of this Agreement shall be extended on a month-to-month basis until terminated by either party giving the other party thirty (30) days prior written notice."  The Engine Lease expired on June 1, 2011.  The parties continued performing after the initial terms of both agreements had expired.

On April 3, 2014, Amerijet sent Zero Gravity notice that it was terminating the Management Services Agreement, effective May 4, 2014.  On April 7, 2014, Amerijet sent Zero Gravity a demand letter, insisting that Zero

No. 14-20521

Gravity sign a new Engine Lease or else Amerijet would take possession of the engines on April 14, 2014. Zero Gravity declined.

On April 14, 2014, Amerijet filed a petition and application for a temporary restraining order, temporary injunction, and permanent injunction in state district court in Texas. Amerijet's petition claimed that, as the Engine Lease had expired, it had the right to the immediate possession of the engines. Amerijet's petition also sought a declaratory judgment that it was entitled to possession of the engines. The Texas district court issued a temporary restraining order the same day.

Zero Gravity responded on April 17, 2014, by filing (also in state court) a document entitled "~~ORIGINAL VERIFIED PETITION AND~~ APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND TEMPORARY AND PERMANENT INJUNCTION, AND MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER OBTAINED BY AMERIJET INTERNATIONAL, INC" (the "Filing").[1] The Filing sets out facts regarding, *inter alia*, the parties, proper venue, the Engine Lease and Management Services Agreement, and the demand from Amerijet and Zero Gravity's response. The Filing then requests relief in the form of dissolution of Amerijet's temporary restraining order, a temporary restraining order and temporary and permanent injunctions maintaining the status quo, and a declaratory judgment that "Zero Gravity is in rightful possession of the Engines." The filing was verified.

On April 17, 2014, the Texas state court orally dissolved the temporary restraining order. On April 19, 2014, the Texas state court issued an order enjoining the parties from interfering with the engines so as to maintain the status quo until the hearing scheduled for April 21, 2014. At that hearing, the

---

[1] "ORIGINAL VERIFIED PETITION AND" is struck out by hand on the document. At a hearing before the district court, counsel for Zero Gravity stated that he had "shortened [the caption] at the bench."

No. 14-20521

Texas state court confirmed the dissolution of the April 17, 2014, temporary restraining order and dissolved the April 19, 2014, sua sponte order based on a joint motion by Amerijet and Zero Gravity.

On May 6, 2014, Zero Gravity removed the case to the United States District Court for the Southern District of Texas.  The following day, Amerijet filed a Rule 41(a) notice of voluntary dismissal without prejudice in the district court.  The notice stated that "Defendant has not answered or filed a motion for summary judgment," "[t]herefore, this action may be voluntarily dismissed without prejudice under Rule 41(a)(1)(A)(i) upon the filing of this notice."

On May 9, the district court issued an order setting a conference with the parties for May 12.  At the May 12 hearing, Amerijet raised the Rule 41 dismissal, but the district court rejected Amerijet's reliance on the purported dismissal, citing the fact that the court still needed to dispose of the bond and Zero Gravity's pending "counterclaim."  After the hearing, the district court issued a "Management Order," stating that "[b]y May 13, 2014, Zero Gravity Corporation must give Amerijet International Inc. and the court a two-page narrative describing its damages," relating to the release of the bond for the temporary restraining order in state court.  The court stated that Amerijet would then have two days to respond to that narrative.

Zero Gravity and Amerijet both submitted declarations contesting which party should receive the cash bond Amerijet posted when it obtained the temporary restraining order.  Zero Gravity then filed an "Initial Conference Supplement" with the district court, stating that, though Zero Gravity had "advised the court that the matter was largely resolved" at the May 12 conference, Amerijet had recently advised Zero Gravity that it would not release the aircraft maintenance logs to Zero Gravity due to an alleged FAA audit, though Amerijet provided no correspondence with the FAA reflecting such an audit.  Zero Gravity stated that "[t]o change maintenance providers,

No. 14-20521

and continue to fly for NASA, Zero Gravity needs the logs immediately." As such, Zero Gravity requested an additional conference with the district court and requested "that this matter not be closed until this issue is resolved, either by conference or counterclaim." Shortly thereafter, Zero Gravity filed an "Initial Conference Second Supplement," advising the court that "[s]hortly after the previous request for a conference, [Amerijet] informed Zero Gravity that it would transfer the aircraft maintenance records" and withdrawing the request for a conference. Amerijet then filed a document advising the court that the engines had been returned and the maintenance records transferred. The document also stated that "Zero G[ravity] has reviewed the records and signed a written acknowledgment that all records required by [federal regulations] have been received, reviewed and accepted, and have been found to be complete."

On June 4, 2014, the district court issued a "Final Dismissal." The Final Dismissal stated: "Having been advised that a settlement has been reached, the court dismisses this case with prejudice." The Final Dismissal also released the bond to Amerijet and advised that "[i]n the future, [Amerijet] will be more cautious about demanding emergency relief." The Final Dismissal then stated: "This court retains jurisdiction to enforce the settlement."

After the Final Dismissal, Zero Gravity filed a "Motion to Enforce Obligations and Representations," alleging that important maintenance records had not yet been returned to Zero Gravity, contrary to Amerijet's representations to the court and obligations under the parties' settlement. The district court scheduled a hearing on the motion. Prior to the hearing, Amerijet filed a response in opposition to the motion to enforce, denying that maintenance records had been withheld and stating that Amerijet intended to raise "the issue of additional claims against Zero Gravity" at the hearing. At the hearing on June 27, the parties discussed with the court the status of the

5

maintenance reports, as well as a claim by Amerijet that Zero Gravity was retaining custody of spare parts that belonged to Amerijet. Amerijet also briefly mentioned that Zero Gravity still owed it $160,000.00 and alleged concerns that two pilots hired from Amerijet by Zero Gravity would disclose Amerijet trade secrets. The district court entered an order after the hearing outlining Amerijet's obligation to deliver the maintenance records to Zero Gravity. The order also required the parties to submit status reports by July 10.

Amerijet's status report recounted its production of maintenance records to Zero Gravity, discussed an issue with the return of Amerijet's manuals, and asserted that $127,435.66 was still owed by Zero Gravity to Amerijet. Amerijet's status report also alleged a dispute over ownership of some of the spare parts that were discussed at the June 27 hearing. Zero Gravity's status report addressed and contested the same issues. The district court ordered a status conference.

At the status conference, the court resolved the issue of the remaining spare parts. Zero Gravity then informed the court that Amerijet had just sued Zero Gravity in federal court in Florida. After the hearing, the district court issued an order reopening the case, which stated that although the case was closed "after the parties settled the dispute," "[t]he court retained jurisdiction to enforce the settlement" and "[t]he case was reopened by the parties when [Zero Gravity] moved to enforce the terms of the settlement." The order also stated, "[i]n conjunction with enforcing the terms of the settlement, [Amerijet] asked the court to grant it affirmative relief, including the return of its manuals, parts, tools, and money – money several times." The same day, the court issued an order to show cause directing Amerijet to "appear and explain why it should not be enjoined from asserting compulsory counterclaims in the United States District Court for the Southern District of Florida."

No. 14-20521

At the show cause hearing, the district court and the parties discussed the status of Amerijet's flight manuals, the spare parts, and the money Amerijet claimed Zero Gravity owed, and then turned to the Florida lawsuit. The court observed that the claims in the Florida lawsuit involved a breach of the Management Services Agreement and stated that the Texas claims arose out of the related Engine Lease. The district court also observed that Amerijet had raised the issue of the money it claimed to be owed on multiple occasions. The district court then stated once again that Amerijet's voluntary dismissal was "ineffectual because of the counterclaim." After the show cause hearing, the district court issued an order enjoining Amerijet from suing "in Florida or elsewhere based on the same transaction." The order stated that Amerijet's "claims to parts, money, and intellectual property arise under the same nucleus of fact as its claims to the engines – the bailment – and were argued here."

Amerijet then filed a petition for a writ of mandamus with this court. The mandamus petition seeks vacatur of the district court's order reopening the case "and further directing the district court to relinquish and terminate any further exercise of power or dominion over that closed action for want of subject matter jurisdiction." The mandamus petition is premised on Amerijet's purported Rule 41(a)(1)(A)(i) voluntary dismissal. Amerijet then filed an interlocutory appeal of the district court's order enjoining Amerijet from prosecuting the Florida lawsuit. The two cases before this court have been consolidated.

## II.

A district court's injunction of parallel federal court litigation under the first-to-file rule is reviewed for abuse of discretion. *See Mun. Energy Agency v. Big Rivers Elec. Corp.*, 804 F.2d 338, 343 (5th Cir. 1986); *see also Int'l Fidelity Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677 (5th Cir. 2011). Yet to

the extent Amerijet's challenge to the injunction is based on the effectiveness of the Rule 41(a)(1)(A)(i) dismissal, that is an issue of law that we review de novo. *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 718 (5th Cir. 2010). This court exercises "plenary, de novo review of a district court's assumption of subject matter jurisdiction." *Adam Techs. Int'l S.A. v. Sutherland Global Servs., Inc.*, 729 F.3d 443, 447 (5th Cir. 2013) (internal quotation marks omitted).[2]

## III.

Federal Rule of Civil Procedure 41(a)(1)(A)(i) allows a plaintiff to voluntarily dismiss an action without a court order by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A)(i). The notice of dismissal is self-effectuating and terminates the case in and of itself; no order or other action of the district court is required. *Qureshi v. United States*, 600 F.3d 523, 525 (5th Cir. 2010); *Am. Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963); 9 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2363 (3d ed. 2014) ("Although Rule 5(a) requires that a notice of voluntary dismissal be served on all other parties, the cases seem to make it clear that the notice is effective at the moment it is filed with the clerk. It is merely a notice and not a motion, although a notice in the form of a motion is sufficient. No order of the court is required and the district judge may not impose

---

[2] As we reject Amerijet's argument regarding the Rule 41(a)(1)(A)(i) dismissal on the merits, we also deny its petition for a writ of mandamus. *See Cheney v. U.S. District Court*, 542 U.S. 367, 380–81 (2004) (stating that mandamus is only appropriate where (1) the petitioner has "no other adequate means to attain the relief he desires," (2) the petitioner's "right to issuance of the writ is clear and indisputable," and (3) the court hearing the petition is satisfied, in the exercise of its discretion, "that the writ is appropriate under the circumstances" (internal quotation marks omitted)).

conditions." (footnotes omitted)). As this court said of the notice of dismissal in *American Cyanamid Co. v. McGhee*:

> That document itself closes the file. There is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play. This is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court. There is not even a perfunctory order of court closing the file. Its alpha and omega was the doing of the plaintiff alone.

317 F.2d at 297. Accordingly, the district court may not attach any conditions to the dismissal. *Williams v. Ezell*, 531 F.2d 1261, 1264 (5th Cir. 1976). After the notice of voluntary dismissal is filed, the district court loses jurisdiction over the case. *Qureshi*, 600 F.3d at 525.[3]

Further, this court has determined that Rule 41(a)(1)(A)(i) "means precisely what it says" by stating that only the filing of an answer or motion for summary judgment terminates the plaintiff's unilateral right to dismiss the action by notice. *Pilot Freight Carriers, Inc. v. Int'l Bhd. of Teamsters*, 506 F.2d 914, 916 (5th Cir. 1975) (holding that a motion for a preliminary injunction and a hearing on that motion were insufficient to prevent the plaintiff from dismissing by notice); *Carter v. United States*, 547 F.2d 258, 259 (5th Cir. 1977) ("Unless a defendant has filed an answer or summary judgment motion, the governing provision is rule 41(a)(1). Defendants who desire to prevent plaintiffs from invoking their unfettered right to dismiss actions under rule 41(a)(1) may do so by taking the simple step of filing an answer."). As such, only an answer or a motion for summary judgment will suffice to preclude a plaintiff from dismissing under Rule 41(a)(1)(A)(i). *See Pilot Freight*, 506 F.2d

---

[3] That said, "[t]hat the court loses jurisdiction over the litigation does not, however, deprive the district court of its inherent supervisory powers." *Id.* After dismissal, the district court may impose Rule 11 sanctions, impose costs and attorney's fees, and undertake contempt proceedings. *Id.*

No. 14-20521

at 916. An argument that a filing short of an answer or a motion for summary judgment joins the merits of the case, has consumed significant resources or effort, or is sufficiently equivalent to a motion for summary judgment, will not be heard. *Williams,* 531 F.2d at 1263 ("We specifically refused to interpret Rule 41(a)(1) to preclude a voluntary dismissal 'whenever the merits of the controversy have been presented to the court in any manner.'" (quoting *Pilot Freight,* 506 F.2d at 916)); *Carter,* 547 F.2d at 259 ("The defendants complain that they expended considerable effort in preparing their motion to dismiss, and they argue that their dismissal motion should therefore be treated as the equivalent of an answer. . . . Rule 41, however, sanctions no such case-by-case analysis of the amount of effort expended by defendants. Nor does the fact that defendants had 'joined issue' on the merits affect plaintiff's ability to dismiss his suit. Unless a defendant has filed an answer or summary judgment motion, the governing provision is rule 41(a)(1).").

This case is, as far as we can tell, unique among Rule 41(a)(1)(A)(i) cases, as the relevant pleading was filed in state court prior to removal. As a preliminary matter, we therefore must determine what Rule 41(a)(1)(A)(i) means by "an answer" with regard to pre-removal pleadings, i.e., whether an answer sufficient under state law precludes voluntary dismissal or whether the pre-removal pleading must meet the requirements for an answer under the Federal Rules of Civil Procedure. We conclude that under Rule 41(a)(1)(A)(i) an answer under state law is sufficient to preclude voluntary dismissal by notice. One of the concerns underlying the cases applying Rule 41(a)(1)(A)(i) is ease of administration:

> "Rule 41(a)(1) as it was drafted simplifies the court's task by telling it whether a suit has reached the point of no return. If the defendant has served either an answer or a summary judgment motion it has; if the defendant has served neither, it has not. We

10

are unwilling to upset the balance struck in Rule 41(a)(1) by adding some different test."

*Aero-Colours, Inc. v. Propst*, 833 F.2d 51, 52 (5th Cir. 1987) (per curiam) (quoting *Winterland Concessions Co. v. Smith*, 706 F.2d 793, 795 (7th Cir. 1983)); *see also Exxon Corp. v. Md. Cas. Co.*, 599 F.2d 659, 662 (5th Cir. 1979) ("This mechanical approach to the problem is consistent with the underlying theme that the procedure imposed by the rule is simple and routine."); *cf. Pilot Freight*, 506 F.2d at 916 ("But more importantly in our view, the necessity of deciding in every case 'How much preparation is too much'? in itself demonstrates the relative undesirability of the subjective approach endorsed in *Harvey* as opposed to the objective standards embodied in the Rule."). The text of the Rule itself only requires service of "an answer," and does not explicitly require that, as here, a pre-removal answer comply with the provisions of Rule 8. Imposing the requirements of the Federal Rules of Civil Procedure on a pre-removal answer only for purposes of Rule 41 would be anachronistic and would frustrate the expectations of the parties. *See* Fed. R. Civ. P. 81(c)(2) ("After removal, repleading is unnecessary unless the court orders it."). Further, where a proper state-court answer has been filed prior to removal, we fail to see how requiring the defendant to re-answer under the requirements of Rule 8 in order to preclude voluntary dismissal would serve any purpose underlying Rule 41. As such, a sufficient answer under state law filed prior to removal is sufficient to preclude voluntary dismissal by notice.

The question is, therefore, whether Zero Gravity's state-court Filing constitutes an answer under Texas law. We conclude that it does, albeit barely. The Filing alleges facts that constitute defenses to Amerijet's claims in its petition and requests affirmative relief. *See* Tex. R. Civ. P. 45 ("Pleadings in the district and county courts shall (a) be by petition and answer; (b) consist of a statement in plain and concise language of the plaintiff's cause of action or

11

the defendant's grounds of defense."); Tex. R. Civ. P. 85 ("The original answer may consist of motions to transfer venue, pleas to the jurisdiction, in abatement, or any other dilatory pleas; of special exceptions, of general denial, and any defense by way of avoidance or estoppel, and it may present a cross-action, which to that extent will place defendant in the attitude of a plaintiff."). Zero Gravity's Filing alleges facts that it argues show that the parties' course of conduct regarding the Engine Lease forecloses Amerijet's termination of the Engine Lease absent "reasonable notice." The Filing also alleges facts regarding the Management Services Agreement and argues that "allowing Amerijet to seize the engines would deprive Zero Gravity of its rights under the parties' Management Services Agreement." These allegations constitute "a statement in plain and concise language of the . . . defendant's grounds of defense." Tex. R. Civ. P. 45; *see also id.* ("All pleadings shall be construed so as to do substantial justice."); *cf. Guadalupe Econ. Servs. Corp. v. Dehoyos*, 183 S.W.3d 712, 716 (Tex. App.—Austin 2005, no pet.) ("A responsive pleading should be liberally construed in the absence of special exceptions. However, an answer must contain sufficient information to place in issue the claims made in the suit." (citation omitted)). Further, the Filing asserts a counterclaim seeking declaratory relief. *See* Tex. R. Civ. P. 85 (stating that a counterclaim may be asserted in an answer). Additionally, the fact that the Filing is not entitled "answer" is not controlling. *See* Tex. R. Civ. P. 71. Moreover, Texas cases liberally construe responsive filings as answers. *See, e.g.*, *Smith v. Lippmann*, 826 S.W.2d 137, 137 (Tex. 1992); *Gales v. Denis*, 260 S.W.3d 22, 29–30 (Tex. App.—Houston [1st Dist.] 2008, no pet.). While these cases arise in the context of a pro se defendant seeking to avoid a default judgment, Texas law provides no other guidance on the outer limits of what constitutes an answer. Additionally, we note that Zero Gravity's filing was drafted in response to a temporary restraining order, a fast-paced context with

No. 14-20521

less of an emphasis on form. Given that Zero Gravity's filing satisfies the minimal characteristics of an answer under the Texas Rules of Civil Procedure, and given that Texas requires pleadings to be liberally construed, we hold that Amerijet's Rule 41(a)(1)(A)(i) dismissal was ineffective, as it was not filed prior to the filing of the defendant's answer.

## IV.

Alternatively, Amerijet contends that the district court lacked subject matter jurisdiction to enforce the settlement agreement because the district court did not incorporate the terms of the settlement agreement into the Final Dismissal. This argument is meritless. The Final Dismissal expressly stated "[t]his court retains jurisdiction to enforce the settlement." That is sufficient to provide subject matter jurisdiction to enforce the settlement agreement. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) ("The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (*such as a provision 'retaining jurisdiction' over the settlement agreement*) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." (emphasis added)); *see also Hospitality House, Inc. v. Gilbert*, 298 F.3d 424, 430 (5th Cir. 2002).

## V.

Finally, Amerijet argues that the district court abused its discretion by enjoining the Florida lawsuit. "District courts have discretion to enjoin the filing of related lawsuits in other U.S. district courts." *Big Rivers*, 804 F.2d at 343. "The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power*

*Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). Under this first-to-file rule, the cases need not be identical; rather, "the crucial inquiry is one of substantial overlap." *Int'l Fidelity*, 665 F.3d at 678 (internal quotation marks and brackets omitted). "The rule rests on principles of comity and sound judicial administration" and the concern underlying the rule "manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (internal quotation marks omitted).

Here, the district court did not err in enjoining the Florida lawsuit. The Texas case was clearly the first-filed suit. Amerijet filed its petition in Texas court on April 14, 2014, and the Florida complaint was not filed until July 28, 2014. Further, the cases substantially overlap. The Florida lawsuit expressly seeks attorney's fees and costs that Amerijet incurred in the Texas lawsuit. It also seeks payment in quantum meruit for the period of time between the termination of the agreed extension of the Engine Lease and Zero Gravity's return of the engines and the rental payment for the engines for May 2014. Such payments appear to arise directly out of the parties' agreement regarding the engines that formed the "settlement" in the Texas case. The Florida lawsuit requests, *inter alia*, damages for breach of the Management Services Agreement and the Engine Lease and asserts a conversion claim (and a civil theft claim) for the manuals and spare parts retained by Zero Gravity. The Texas case arose out of a dispute over a breach of the Engine Lease—Amerijet claimed that it was entitled to immediate possession of the engines by virtue of the Engine Lease's expiration, and Zero Gravity claimed that the Engine Lease had been implicitly renewed by the parties' course of dealing. Further, the parties both presented claims to—and obtained relief from—the district court regarding Amerijet's spare parts and the manuals in the hearings

No. 14-20521

relating to their settlement. As such, there is a substantial risk that rulings in Florida—or Texas—would "trench upon the authority" of the other court and could lead to "piecemeal resolution of issues that call for a uniform result." *Cadle*, 174 F.3d at 603. Amerijet contends that it cannot be enjoined from proceeding in Florida because its claim for payments due under the contracts had not arisen at the time it filed its complaint in Texas. But the cases Amerijet cites as support indicate only that a claim will not be *res judicata* if it could not have been brought at the time of the filing of the complaint in the earlier lawsuit. *See Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955); *Curtis v. Citibank*, 226 F.3d 133, 139 (2d Cir. 2000). Neither case states that a federal court may not enjoin a parallel action that asserts claims that substantially overlap with claims pending before it where the second-filed suit also asserts a new cause of action. Amerijet also argues that the district court erred in enjoining the Florida lawsuit because of the forum selection clauses in the Management Services Agreement and the Engine Lease.[4] Yet Amerijet waived this argument by failing to make it before the district court. *See Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 267 (5th Cir. 2014).[5] We therefore conclude that the district court did not abuse its discretion by enjoining the Florida lawsuit.

## VI.

For the foregoing reasons, the injunction issued by the district court is AFFIRMED and the petition for a writ of mandamus is DENIED.

---

[4] The forum selection clause in the Management Services Agreement is non-exclusive. The Engine Lease has an exclusive forum selection clause selecting Broward County, Florida.

[5] We further note that in support of its argument Amerijet only cites mere platitudes about forum selection clauses being "presumptively valid" and about their enforcement protecting the parties' "legitimate expectations" and furthering "vital interests of the justice system." But Amerijet cites no authority to support its contention that a district court abuses its discretion by enjoining parallel litigation under the first-filed rule due to a forum selection clause where the party invoking the forum selection clause *itself initiated the first-filed suit.*